IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 3:17-cv-137 |
| ZACHARY SANDERS and CHARLES MAPES, as Parent and Guardian of T.M. Deceased. | ) ) ) ) ) | |
| Defendants. | ) | |

# Opinion and Order

This is a tragic case about bad choices — choices that led to life changing consequences for one young man and life ending consequences for another, a 16-year-old boy. Really the case is about something much more pedestrian — money, and more specifically, about insurance coverage and whether the imprisoned man is owed a defense and indemnification from an insurance carrier, State Farm, in a threatened civil action by the deceased boy's father.

The facts are grim and almost entirely undisputed. Here's what happened: 16-year-old T.M. and a friend of his set up a drug deal where they were supposed to sell drugs to Zachary Sanders. Sanders arrived at the agreed upon location — a park in St. Joseph County. T.M. and his buddy entered Sanders' car but instead of engaging in the drug deal, they had another thing in mind. T.M. pulled a gun on Sanders, stuck it at the

back of his head and told him to hand over the money. There would be no drug deal; just a robbery. Sanders initially resisted, but with a gun pointed at him, eventually he complied and gave them the money. Two other people were with T.M. and his friend that night. They knew the robbery was going to take place, and in fact they witnessed it from a nearby car. One of the cohorts supplied the gun for the robbery having gotten it from her grandfather's house. As mentioned, T.M. was 16 years old at the time of the robbery; Sanders was 20.

After getting the money, T.M. and his friend fled on foot through a large grassy area in the park. Sanders went after them in his car. He floored the accelerator and, according to an accident reconstructionist, traveled approximately 250 feet before running T.M. over and killing him. During the pursuit, Sanders accelerated and turned the car suggesting that he was bent on running T.M. over. An incriminating text recovered from Sanders' cell phone helps to confirm this. After striking T.M., Sanders fled the scene. The two witnesses who came to the scene with T.M. and his friend went over to T.M.'s unconscious body and retrieved the handgun from under him and returned it to the grandfather's home. It was later retrieved by the police. *See generally* DE 20-3.

Law enforcement officers were drawn to Sanders after analyzing T.M.'s cell phone which showed contact between the two. A review of Sanders' phone revealed a smoking gun. As noted above, the day after the incident in the park, Sanders texted a friend telling him that the drug deal did not go down as planned. He explained to his

friend that "I didn't get [the pills] he robbed me But it's aight I ran him over when he was running away." DE 24-1 at 4. Sanders admitted to the police that he was the one who sent the incriminating text message. *Id.* He further admitted that he did in fact run T.M. over but, contrary to what he said in his text message, claimed he did it out of panic and fear. DE 20-3.

Sanders was charged in state court with voluntary manslaughter under Indiana Code § 35-42–1-3(a). A person commits the crime of voluntary manslaughter when he "knowingly **or** intentionally kills another human being . . . while acting under sudden heat . . . " *Id.* (emphasis added). Sanders was specifically charged with committing the voluntary manslaughter knowingly but not intentionally. At trial, consistent with what he previously told the police, Sanders testified that he acted out of fear. Sanders believed that T.M. was going to shoot him as T.M. was retreating through the field, and that his decision to run T.M. over was done as a "flight response" and "a reaction to the gun." DE 25-1 at 3-4. Sanders also told the jury that he "felt [he] was in danger" and that he "never intended to run [T.M.] over." *Id.* at 4 and 5. The jury didn't buy it and found him guilty of knowingly killing T.M. while under heat of passion. DE 20-4. He was subsequently sentenced to twenty years in the Indiana Department of Corrections, and his conviction was recently affirmed on appeal. DE 20–5; 24-1.

The car that Sanders used to run T.M. over was owned by his grandmother and insured by State Farm. T.M.'s father, Charles Mapes, has threatened a lawsuit against Sanders. DE 20-6. To that end, Mapes' counsel has inquired whether State Farm intends

to defend and indemnify Sanders. DE 20-6. State Farm responded with this declaratory judgment action. The pertinent policy covers liability claims against an insured who causes bodily injury by an "accident." DE 20-7 at 9. The policy also specifically excludes coverage for an "INSURED WHO INTENTIONALLY CAUSES BODILY INJURY . . ." DE 20-7 at 10 (all caps in original).

The issue before me is whether Sanders' voluntary manslaughter conviction for "knowingly" killing T.M. means it wasn't an "accident" and, alternatively, whether the summary judgment record establishes that Sanders' actions were intentional thus precluding coverage under the policy exclusion for damage caused by intentional actions of the insureds.

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

Let's start with some basics. The substantive law applicable to this case is the law of the State of Indiana. The interpretation of an insurance policy, like other contracts, is typically a question of law that I can resolve on summary judgment. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000). When interpreting an insurance

4

policy, my goal is to ascertain and enforce the parties' intent as reflected in the insurance contract. *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Am. States Ins. Co. v. Adair Indus., Inc.*, 576 N.E.2d 1272, 1273 (Ind. Ct. App. 1991). However, ambiguous terms in the contract are to be construed against the insurer, especially where the policy excludes coverage. *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994).

An insurance company's duty to defend is broader than its duty to indemnify. *Seymour Mfg. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996). An insurer is obligated to defend its insured against suits alleging facts that might fall within the coverage of the policy. *Fed. Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). "[T]here is essentially only one standard — that the allegations of the complaint, including the facts alleged, give rise to a duty to defend whenever, if proved true, coverage would attach." *Id.* Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will the insurer be excused from defending its insured. Lee R. Russ, 14 COUCH ON INSURANCE § 200:12 (3d ed. 2007); *see also Ticor Title Ins. Co. of Cal. v. FFCA/IIP 1988 Prop. Co.*, 898 F. Supp. 633, 638-39 (N.D. Ind. 1995) (if there is even a possibility of coverage, the insurer is obligated to defend).

The first place to look when trying to determine the insurer's duty to defend is the allegations contained within the underlying complaint and from those facts known or ascertainable by the insurer after reasonable investigation. *Knight v. Ind. Ins. Co.*, 871

N.E.2d 357, 362 (Ind. Ct. App. 2007); *Liberty Mut. Ins. Co. v. OSI Indus., Inc.*, 831 N.E.2d 192, 198 (Ind. Ct. App. 2005). In this case, there is no underlying state court complaint to review. That is neither here nor there because "in evaluating the factual basis of a claim and the insurer's concomitant duty to defend, this court may properly consider the evidentiary materials offered by the parties to show coverage." *Wayne Twp. Bd. of Sch. Comm'rs v. Ind. Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995) (quoting *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)). For example, the Indiana Supreme Court has considered extrinsic, designated evidence when analyzing an insurer's duty to defend. *See Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1291 (Ind. 2006). So too has this Court considered the relevant designated evidence when determining whether State Farm owes a duty to defend (and indemnify) Sanders. *See Continental Ins. Co. v. George J. Beemsterboer, Inc.*, 148 F. Supp. 3d 770, 781-82 (N.D. Ind. 2015) (analyzing relevant case law and finding it appropriate to consider extrinsic evidence in assessing an insurer's duty to defend). Importantly, the defendants have neither objected to nor moved to strike any of State Farm's designated evidence.

Under Indiana law, a conviction in a criminal case is admissible as evidence in a subsequent civil proceeding. *Does v. Tobias*, 715 N.E.2d 829 (Ind. 1999). What's more, a conviction can have collateral estoppel effect; it can be used in an offensive way provided the defendant had a full and fair opportunity, and the appropriate incentive, to vigorously litigate the matter in the first action. *Id. (citing Parklane Hosiery Co. Inc. v. Shore*, 439 U.S. 322, 330-31 (1979)). (There are other considerations that have to be taken

6

into account in deciding whether offensive collateral estoppel will be permitted but they are not at issue here).

It is plain that Sanders had an incentive to vigorously argue in his criminal case that he did not knowingly run T.M. over. His freedom was at stake. He took the stand at the trial and tried to convince the jury that he was innocent of any wrongdoing. But the jury rejected his position and found him guilty of knowingly running T.M. down with his car — a voluntary manslaughter. Because that issue has been decided after Sanders had a full and fair opportunity to contest the matter in his criminal trial, he is now estopped from claiming that he did not knowingly run T.M. over. T.M.'s father did not have a full and fair opportunity to litigate this issue in Sanders' criminal trial and so cannot now be estopped from litigating the issue of Sanders' intent. *See Wolverine Mutual Insurance Co. v. Vance*, 325 F.3d 939, 944 (7th Cir. 2003). But because State Farm's contractual duty runs only to Sanders, Mapes can recover insurance proceeds only insofar as his rights derive from Sanders' rights under the insurance policy. Thus, Mapes is relegated to standing in Sanders' "legal shoes," and his claim can be no greater than Sanders' own claim would be under the policy. *See id.* Sanders is estopped from asserting that his acts were not knowingly, and so Mapes, standing in Sanders' "legal shoes," also may not assert that Sanders' acts were not done knowingly.

But what does it mean to do something "knowingly?" Is it the same as doing it intentionally? The State Farm policy provides coverage for "accidents" resulting in injury caused by an insured. The policy does not define the term "accident" but the

Indiana Supreme Court has held that the term "accident" as used in an insurance policy means "an unexpected happening without an intention or design." *Auto-Owners Ins. Co.*, 842 N.E.2d at 1283. Several courts have sensibly held that when someone is found to have done something "knowingly" that means it wasn't an accident. *See e.g. State Farm Fire & Cas. Co. v. C.F.*, 812 N.E.2d 181, 185 (Ind. App. 2004); *State Farm Fire & Cas. Co. v. C.W.*, 2010 WL 597930 (N.D. Ind. Feb. 17, 2010). This is because people act "knowingly" if, when they engage in the conduct, they are aware of a high probability that they are doing so. Ind. Code § 35-41-2-2(b); *Boyko v. State*, 566 N.E.2d 1060, 1061 (Ind. Ct. App. 1991). They are not acting through ignorance, mistake or accident. *See e.g.*, Committee on Federal Criminal Jury Instructions of the Seventh Circuit, Pattern Criminal Jury Instructions of the Seventh Circuit § 4.10 (2012 ed.). In other words, when Sanders ran down T.M. with his car in that St. Joseph County park, he did it knowingly, or so the state criminal jury found. This means under Indiana law it wasn't an accident, and therefore there is no coverage.

But let's suppose that there is some difference between acting "knowingly" and acting "intentionally" as Mapes argues. It gets him nowhere in this case because based on the evidence submitted in support of summary judgment, it is plain to me that Sanders acted intentionally in any event. Recall that under Indiana law I am permitted to look beyond the four corners of the complaint to consider the evidence that has been put before me on summary judgment to determine whether there is a duty to defend. *Auto-Owners Ins. Co.*, 842 N.E.2d at 1291. Mapes has not moved to strike any of that

8

evidence, and so I will consider it. And the evidence presents a compelling case that Sanders intended to run T.M. over. The police reports indicate that an accident reconstruction was done and showed that Sanders traveled 250 feet before hitting T.M. with his car, he made turns suggesting he was trying to hit him, and there was evidence that he accelerated as well. The topper of course is the text Sanders sent the next day. He told his friend the drug deal didn't go down. "I didn't get [the pills] he robbed me But it's aight I ran him over when he was running away." DE 24-1 at 4. That certainly suggests that Sanders "ran him over" intentionally. In the face of this evidence, no rational jury could find by a preponderance of the evidence that Sanders didn't act intentionally, especially since another jury rejected the same position under the more exacting beyond a reasonable doubt standard applicable in criminal cases.

In sum, under Indiana law, when Sanders knowingly ran T.M. over (as was found by the jury in his criminal case), that necessarily means that it wasn't an accident as defined in the policy of insurance. And in any event, the exclusion in the policy for intentional actions applies because no reasonable jury could find that Sanders acted unintentionally when he ran T.M. over. State Farm's Motion for Summary Judgment is therefore **GRANTED** (DE 20), and it is now **DECLARED** that State Farm has no duty to defend nor indemnify Sanders for actions he took on February 19, 2016 which resulted in the death of T.M. The Clerk should enter Judgment in favor of State Farm and against Zachary Sanders and Charles Mapes accordingly.

**SO ORDERED**.

ENTERED: October 19, 2017

                                                                 s/ Philip P. Simon
                                                                 PHILIP P. SIMON, JUDGE
                                                                 UNITED STATES DISTRICT COURT